Peter PIAMBINO, et al., Plaintiffs,

v.

BESTLINE PRODUCTS, INC., et al., Defendants.

David Sylva, Compliance Officer of the Restitutionary Fund, Plaintiff-Intervenor.

No. 73–1230–CIV.

United States District Court, S.D. Florida.

Sept. 30, 1986.

Neal Morehart, pro se.

Lewis F. Hawkins, San Rafael, Cal., for Donald Omholt.

Robert Schuster, pro se.

Saul Tave, pro se.

Jerry J. Weiss, pro se.

Frank Ubhaus, Pitto, Ubhaus, Waite, Fedlei & Colonborg, San Jose, Cal., for Bestline, Brassfied, Colvin, Larkin & Soto.

Toro Ikeda, pro se.

Evelyn Langlieb Greer, P.A., Miami, Fla., for David Sylva.

David L. Eastis, pro se.

Smathers and Thompson, Miami, Fla., for Larry S. Huff.

James H. Joseph, P.C., Pittsburgh, Pa., pro se.

Robert C. Josefsberg, Miami, Fla., for Majority Class.

Frank Gafford, Lake City, Fla., for E.J. Beckman.

Ira Marcus, Ft. Lauderdale, Fla., for William Gelfound.

David P. Gibson, pro se.

Bert Hardcastle, pro se.

Larry D. Huff, pro se.

Bruce Rogow, Ft. Lauderdale, Fla., for Carl H. Hoffman.

James Herbert, pro se.

John Wolfe, pro se.

Kenneth Lutz, pro se.

Marvin Sternberg, pro se.

## ORDER HOLDING CARL H. HOFFMAN & JAMES H. JOSEPH IN CONTEMPT OF COURT

MARCUS, District Judge.

Carl H. Hoffman and James H. Joseph, formerly lead counsel to the Plaintiff Majority Class have been ordered by this Court to pay into the Registry of the Court attorney's fees and reimbursed litigation expenses, with interest, which they received as part of an earlier, unsuccessful settlement of this cause. Upon their complete failure to meet that obligation, this Court conducted a civil contempt hearing on May 22 and 23, 1986. Having reviewed the evidence and arguments presented at that hearing, together with legal memoranda subsequently submitted by the parties, and having carefully considered the Opinion and Mandate of the United States Court of Appeals for the Eleventh Circuit Court in *Piambino v. Bestline*, 757 F.2d 1112 (11th Cir.1985) (*"Piambino* II"), the Court hereby finds Carl H. Hoffman and James H. Joseph to be in civil contempt of court. Carl H. Hoffman may purge himself of the contempt by the payment into the Court's Registry of $125,000 and James H. Joseph may purge himself of contempt by payment of $15,000. Both are directed to make such payment within seventy-five (75) days of the date of this Order.

### I.

A detailed history of this lengthy and very troubled litigation is laid out by the Eleventh Circuit's Opinion in *Piambino* II. There the Circuit Court concluded that the settlement of this cause was manifestly unfair as it was accomplished at the expense of the minority members of the

Plaintiff class, primarily to provide Hoffman and Joseph with attorney's fees. 757 F.2d at 1143–46. *See also Piambino v. Bailey,* 610 F.2d 1306, 1329 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980) (*"Piambino I"*). Upon reaching this conclusion the Circuit remanded the action to this Court for several express purposes, including the return of attorney's fees and expenses paid to Hoffman and Joseph. In this regard the Court explicitly held:

> ... Lead Counsel shall pay into the registry of the district court the attorney's fee and reimbursed litigation expenses they received in connection with the Bestline settlement, with interest at the legal rate from the date of this court's issuance of the mandate in *Piambino I.* Immediately upon its receipt of our mandate, the district court shall *instanter,* without a hearing, issue an order directing Lead Counsel to deposit such amount in the court's registry within thirty days of the date of its order. The order shall recite that Lead Counsel's failure to comply therewith shall subject them to the district court's contempt power.

*Piambino* I, 757 F.2d at 1146.

Pursuant to the Opinion and Mandate of the Circuit Court, this Court twice ordered Hoffman and Joseph to make the necessary reimbursement. An Order dated June 28, 1985 provided as follows:

> Lead Counsel shall deposit into the Registry of this Court within thirty (30) days from the date of this Order the attorney's fee and reimbursed litigation expenses they received in connection with the Bestline settlement, with interest at the legal rate from the date of the issuance of the mandate in *Piambino v. Bailey,* 610 F.2d 1306 (5th Cir.) *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980). Lead Counsel is

herein advised that their failure to comply with the terms of this Order shall subject them to this Court's contempt power.

A second Order, dated December 13, 1985, explicitly directed Hoffman and Joseph to return their payment for attorney's fees and expenses to this Court.

> Both Carl H. Hoffman and James H. Joseph are directed to pay into the Registry of this Court, by cash or check, the attorneys fees they received in connection with the Bestline settlement, no later than 5:00 p.m. on December 27, 1985. Counsel's obligation may not be satisfied by the assignment of receivables.

That Order, too, reminded lead counsel that their failure to comply with the terms of the Order would subject them to the Court's contempt power.

James Joseph and Carl Hoffman, on December 26th and 27th, respectively, notified the Court in writing of their asserted inability to comply with these Court Orders. Accordingly, on April 9, 1986, this Court issued an Order to Show Cause why Hoffman and Joseph should not be held in civil contempt for their failure to comply with this Court's Orders of June 28 and December 13, 1985. A hearing was commenced on May 22, wherein the contempt was ably prosecuted by counsel for Plaintiff-Intervenor.[1] Both Hoffman and Joseph sought to avoid a finding of contempt by adducing evidence of their purported financial inability to comply with the Court Orders.

## II.

Civil contempt is a remedial sanction designed and intended to obtain compliance with a court order or to compensate for damages sustained as a result of noncompliance. *McComb v. Jacksonville Pa-*

---

1. Counsel for Plaintiff-Intervenor was assisted at that hearing by Robert C. Josefsberg and Victor M. Diaz of the law firm of Podhurst Orseck Parks Josefsberg Eaton Meadow & Olin, P.A., counsel for Plaintiff Majority Class. We note that this law firm took on the assignment of representing Plaintiff Majority Class on January 21, 1986, at the request of this Court. Plain-

tiff Majority Class was without counsel pursuant to the Circuit's Mandate in *Piambino* II that barred lead counsel from "appearing as counsel for any party in the case, save themselves...." *Piambino v. Bailey,* 757 F.2d at 1147. The law firm of Podhurst, et al., should be expressly commended for taking on this very difficult assignment.

per Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1948); *National Labor Relations Board v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C.Cir.1981). The failure to comply need not be with the intent to disobey a court order; indeed, intent to disobey is not a prerequisite to a finding of civil contempt.

> The absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. See *United States v. United Mine Workers*, 330 U.S. 258, 303–304 [67 S.Ct. 677, 701, 91 L.Ed. 884]; *Penfield Co. v. Securities & Exch. Commission*, 330 U.S. 585, 590 [67 S.Ct. 918, 921, 91 L.Ed. 1117]; *Maggio v. Zeitz*, 333 U.S. 56, 68 [68 S.Ct. 401, 407, 92 L.Ed. 476]. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. (footnote omitted) The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1948). *See also NLRB v. Blevins*, 659 F.2d at 1183–84 (D.C.Cir.1981); *NLRB v. Crown Laundry and Dry Cleaners Inc.*, 437 F.2d 290, 293 (5th Cir.1971).

 Civil contempt hearings proceed in three stages:

> Such proceedings involve (1) issuance of an order; (2) following disobedience of that order, issuance of a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions; and (3) exaction of the threatened penalty if the purgation conditions are not fulfilled.

*NLRB v. Blevins Popcorn Co.*, 659 F.2d at 1184. At the critical stages all parties are entitled to the guarantees of due process embodied in the Fourteenth Amendment. *Shillitani v. United States*, 384 U.S. 364, 370–371, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966); *Skinner v. White*, 505 F.2d 685, 690 (5th Cir.1974). A defendant in a civil contempt proceeding of course is not entitled to a jury trial. *Shillitani v. United States*, 384 U.S. at 371, 86 S.Ct. at 1536, citing *Uphaus v. Wyman*, 364 U.S. 388, 403–404, 81 S.Ct. 153, 155, 5 L.Ed.2d 148 (1960) (Douglas, J., dissenting). Nevertheless, notice given must be adequate to advise a party of the substance of the hearing.

 A party petitioning for a civil contempt finding must prove by clear and convincing evidence that the respondent violated a court order. However, once the prosecuting litigant makes out a *prima facie* case, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. To succeed on this defense, however, the respondent must go beyond a bald assertion of inability and satisfy his burden by introducing evidence in support of his claim. *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir.1984); *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir.1986).

> This burden is satisfied by making "in good faith *all* reasonable efforts to comply." *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir.1976). We construe this requirement strictly. "Even if the efforts he did make were 'substantial,' 'diligent' or 'in good faith,' ... the fact that he did not make 'all reasonable efforts' establishes that [respondent] did not sufficiently rebut the ... prima facie showing of contempt. The ... use of a 'some effort' standard for measuring the strength of [the] defense [would be] an abuse of discretion." *Hayes*, 722 F.2d at 725 (citation omitted); *Hodgson v. Hotard*, 436 F.2d 1110, 1115 (5th Cir.1971).

*Combs*, 785 F.2d at 984.

Intervenor's burden of proof was easily met here. There can be no question that

this Court has ordered both Hoffman and Joseph to pay into the Registry of the Court the attorney's fee and reimbursed litigation expenses they received in connection with the Bestline settlement, with interest at the legal rate from the date of the issuance of the mandate in *Piambino* I. Those Orders, issued on June 28, 1985 and December 13, 1985, made express reference to the Opinion and Mandate of the United States Court of Appeals for the Eleventh Circuit. The Circuit's Opinion was issued on March 18, 1985, and the Mandate on May 15, 1985. They provided both Hoffman and Joseph with ample and explicit notice of their obligation to return the funds. All told, both lawyers have had well over a year to comply with the Court's Orders, yet they have failed utterly to do so. Thus the central issue before us is the asserted inability to comply with the Court Orders.

At the outset, Hoffman contends that the language of the June 28th and December 13th Orders is not sufficiently precise to allow for a finding of contempt here. Because those Orders directed the repayment of all fees and litigation expenses, Hoffman contends that his inability to pay the entire sum absolves him from paying even a portion of that sum. In view of this asserted inability to pay, he characterizes any finding of contempt as one penalizing him for "failing to do some unspecified act of paying some unknown sum." Hoffman relies, by analogy, upon the requirement of specificity in injunctions under Rule 65, Fed.R.Civ.P. In support of this assertion, Hoffman cites *Atiyeh v. Capps*, 449 U.S. 1312, 1317, 101 S.Ct. 829, 832, 66 L.Ed.2d 785 (1981), in which the Supreme Court emphasized that the specificity provisions of Rule 65(d), Fed.R.Civ.P., are not merely technical, but rather are designed to prevent uncertainty and confusion on the part of those faced with injunctive orders.

We think that the parties could not have been confused within the context of this case. We find nothing ambiguous or uncertain about this matter. Moreover, we think it clear that a person subject to

court order must comply to the fullest extent possible, regardless of whether such efforts result in compliance in whole or part. In *Parker v. United States*, 129 F.2d 374 (1st Cir.1942), the district court observed:

Since the purpose of the commitment would be remedial merely, not punitive, the court would no doubt on application make an appropriate modification of its order if Parker were able to show his utter inability to pay the fine *in whole or in part.* See *In re Byrd Coal Co.*, Inc. 2 Cir., 1936, 83 F.2d 256. The district court, upon such application, might in its discretion withhold commitment to jail for a further period; it might require immediate payment of the fine in part only, with the balance in specified installments; or it might make some other modification of its order appropriate to the facts as they are made to appear.

129 F.2d at 376.

The inability defense requires that the person "has in good faith employed the utmost diligence in discharging his ... responsibilities." *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975).

Without necessarily insisting on the "utmost," this court has conceived the question to be whether defendants have been reasonably diligent and energetic in attempting to accomplish what was ordered. *Washington Metro. A. Tr. Auth. v. Amal. Tr. Union, Etc.*, 174 U.S.App. D.C. 285, 531 F.2d 617, 621 (1976); *United States v. Swingline, Inc.*, 371 F.Supp. 37, 44–45 (E.D.N.Y.1974).

*Aspira of New York v. Bd. of Ed. of City of New York*, 423 F.Supp. 647, 654 (S.D.N. Y.1976). *See also Mowery v. Mowery*, 363 S.W.2d 405, 407 (Ct.App.Tenn.1962).

In short, we think the Defendants must demonstrate that they have done their utmost to comply with this Circuit's Mandate and this Court's Orders. If they fail to make such a showing—and, for the reasons we explain at length below, we find that they have not made such a showing—they must be found in contempt of the Court's

Order. Furthermore, we cannot help but observe that the position urged by Hoffman would require this Court to delay still further what can be fairly described as an already overly lengthy and tortured litigation which commenced sometime in or about 1973. Procedurally we are being urged to issue still another Order requiring only partial payment, and engage in still further hearings about Defendant's ability to pay, and only then find Defendants in contempt should they refuse to make even partial payment. We decline to follow this invitation to exacerbate still further the delays which have plagued this case. No such requirement is evident from our review of the relevant case law, nor do we have any doubt about the sufficiency of the notice, nor about the requirement that the Defendants do their utmost to comply with the lawful Orders of Court.

We are compelled to conclude, and we so find on this record, that Messrs. Hoffman and Joseph have violated the Orders of the Court, and we turn to an examination of their defense of inability. Both Hoffman and Joseph contend that they have spent the funds paid in the Bestline settlement, and that they are not otherwise able to deposit the ordered amounts into the Registry of the Court. The burden of proof surrounding an inability to pay defense is substantial:

> To satisfy their burden of proof, defendants having raised this defense [of inability to comply], must show "categorically and in detail" why they are unable to comply. *N.L.R.B. v. Trans-Ocean Export Packing, Inc., supra,* [473 F.2d] at 616, quoting *In Re Byrd Coal Co., Inc.,* 83 F.2d 256 (2d Cir.1936).... [T]he defense of financial incapacity is available to one who shows that all reasonable avenues for raising funds have been explored and "exhausted." *Ramey Borough v. Commonwealth, DER,* 466 Pa. 45, 351 A.2d 613, 616 (1976). Finally, a party claiming impossibility is under a continuing duty to comply as means become available. (Citations omitted).

*O'Leary v. Moyer's Landfill, Inc.,* 536 F.Supp. 218, 219–20 (E.D.Pa.1982).

### III.

We make these additional observations. First, the law is clear that this defense is to be measured at the time of the contempt proceedings. *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983). This calls for an evaluation of Messrs. Hoffman and Joseph's current assets and current ability to pay. Second, where a contemnor alleges an inability to pay, such inability cannot save him from being found in contempt when contemnor created the inability himself.

> Inability to comply with a court order may be a defense to a charge of contempt ... but not if the defendant created his own inability.

*Air America, Inc. v. Hatton Brothers, Inc.,* 570 F.Supp. 747, 750 (S.D.Fla.1983) *citing United States v. Swingline, Inc.,* 371 F.Supp. 37, 44–45 (E.D.N.Y.1974).

To the extent that Messrs. Hoffman and Joseph are presently unable to make complete restitution—and for the reasons detailed at length below, we so find that both Defendants are unable to comply fully—that inability is of their own making. The Court of Appeals in *Piambino* II observed: "Lead Counsel and the settling defendants have spent the monies they have received and, we have been told, they cannot pay them back." *Piambino v. Bailey,* 757 F.2d at 1137. The Circuit explicitly rejected counsel's argument that repayment would work a manifest injustice:

> Lead Counsel took a calculated risk when, three days after the district court entered the final judgment incorporating the Bestline settlement and in the face of certain appeal by Sylva, they withdrew from the court's registry $1,000,000 in attorneys' fees (the fees Lead Counsel were to receive for the combined settlements). Sylva had done everything the law allowed to stop Lead Counsel's rush for these fees.

*Id.* at 1141. The Court further noted that Messrs. Hoffman and Joseph made this choice in spite of what was characterized as their certain failure on appeal. Rather

than set aside the disputed fees pending resolution of the appeal, both chose to dissipate these substantial funds. Moreover, more than a year has transpired since *Piambino* II was decided and neither Hoffman nor Joseph has made any effort to set aside any funds for compliance with the Mandate. We think they fairly bear the responsibility for the dissipation of these assets.

An analysis of the facts addressed at the contempt hearing leads us to conclude and we so find that Carl H. Hoffman, Jr., is able to pay into the Registry of this Court $125,000, and that James H. Joseph is able to pay into the Registry of the Court $15,000. Each may purge himself of contempt by the payment of the aforementioned sums within seventy-five (75) days of this Order. These asset figures have been carefully summarized in Intervenor's Memorandum Subsequent to Civil Contempt Hearing at pp. 3–18. We briefly summarize and find the central facts to be the following:

## A. *James H. Joseph*

Mr. Joseph has admitted knowledge of the Court's Orders directing payment of attorney's fees and expenses, and has conceded that he has made no such payment. Thus a *prima facie* showing of contempt has been made out. His defense, like that of Mr. Hoffman, is inability to pay. The evidence adduced relating to Mr. Joseph establishes that Joseph has no tangible assets with any net equity but for a 1980 Mercedes automobile. Mr. Joseph was shown to have outstanding a series of substantial unsatisfied final judgments, arbitration awards and tax liens. In April of 1986, for example, the Internal Revenue Service seized a 1981 Audi 5000S owned by his wife. He admits to an annual gross 1986 salary from his law practice of $40,000 to $50,000. The sale of Joseph's automobile should net $15,000; accordingly, he shall be allowed to purge himself of the

contempt upon the payment of this sum into the Court's Registry within seventy-five (75) days of this Order.[2]

## B. *Carl H. Hoffman, Jr.*

Based upon a review of the record evidence, we find that Mr. Hoffman's current assets approximate the following:

| | |
|---|---|
| Home | $106,000 |
| Pilot's Investment Plan | 5,314 |
| Keogh Plan | 16,475 |
| Arrowhead Apartments | 5,000 |
| Law Books and Equipment | 2,000 |
| TOTAL | $134,789 |

Mr. Hoffman has disputed the value assigned to his home and the Keogh Plan and thus he contends that his total available assets equal some $73,552. The main dispute concerns his home. The Coral Gables house was purchased in 1985 for $120,000. At the time of the contempt hearing, May 22–23, 1986, the home was encumbered by a first mortgage in the amount of $7,000 and a second mortgage of $60,000 to Pamela Hoffman, Mr. Hoffman's ex-wife. Mr. Hoffman contends that the home has not appreciated in value and bases this assertion upon the recent sale of a somewhat comparable neighbor's home for $120,000. He further supports his valuation of the home by referring to its assessed value, which is $97,000. Hoffman bears the burden of proving his inability to comply with this Court's Orders; in our view, he has not met this burden regarding his home. He has failed to provide the Court with a current appraisal of the fair market value of his house, and the yardsticks he has offered are rough at best. Moreover, he has ignored some $53,827 spent in early 1985 to renovate, improve and furnish his home.[3] These expenditures in our judgment reflect extensive improvements which have substantially appreciated the value of his house. In the absence of an appraisal of the home, we find that these renovations have created an almost dollar-for-dollar in-

---

2. An examination of the relevant evidence, including James Joseph's Personal Income Tax Returns, Form 1040, for calendar years 1978–1983, his Corporate Income Tax Return for 1982 and 1983, and other business returns for the period 1977–1983, indicates that his income has dropped substantially since 1981.

3. The home improvements made in 1984 aggregating some $53,827 comprised the following payments: $9,041 to J & J Cabinets; $3,409 to

crease in the value of the home, bringing it from $120,000 to some $170,000. When the outstanding mortgages of $67,000 are deducted, we arrive at a net equity of $106,000.

As for the Keogh Plan, valued at $16,475, Mr. Hoffman testified that his share of stock held by the plan could be liquidated and withdrawn subject only to the payment of a federal income tax penalty. Finally, Mr. Hoffman did state that his Arrowhead Apartment investment is not liquid and may not have any market value. Mr. Hoffman did testify, however that he was told that the investment could net $5,000. Indeed, Mr. Hoffman valued that interest at $5,000 (see Plaintiffs' Exhibit 2). We credit that valuation on the face of this record.

Based upon these figures, we find that Mr. Hoffman is indeed capable of paying at least $125,000 into the Registry of this Court; no less will purge Hoffman of this contempt finding. He shall be found in civil contempt and he is directed to pay the sum of $125,000 to the Court Registry within seventy-five (75) days of this Order.

## IV.

██ Compliance by Messrs. Hoffman and Joseph with this Order will discharge them of contempt and end these contempt proceedings. Subsequent contempt proceedings may not be held, even if Mr. Hoffman or Mr. Joseph were later found able to provide additional reimbursement to the Court. *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir.1965), *cert. denied* 384 U.S. 929, 86 S.Ct. 1380, 86 S.Ct. 1445, 16 L.Ed.2d 532 (1966).

[S]ince sanctions imposed in civil contempt proceedings must always give to the alleged contemnor the opportunity to bring himself into compliance, the sanction cannot be one that does not come to an end when he repents his past conduct and purges himself.

*Id.*

The contempt proceeding vindicates the Court's authority, but it does not settle or compromise the beneficiary of this sanction from pursuing execution of the award by civil process. *See, e.g., In re Byrd Coal Co., Inc.,* 83 F.2d 256 (2d Cir.1936). Of course, the Plaintiff-Intervenor may attempt to execute a valid judgment entered by this Court for the remainder due. Accordingly, it is

ORDERED AND ADJUDGED that Messrs. Hoffman and Joseph are found in civil contempt of Court, that they are directed to pay into the Court Registry $125,000 and $15,000 respectively, that the payment of such sums shall be made within seventy-five (75) days of this Order and that that payment shall purge the aforementioned contempt, and finally that should either Mr. Hoffman or Mr. Joseph fail to make the aforementioned payment within this time period, the Court shall hold a hearing in order to determine the appropriateness of any additional sanction as a remedy to enforce the Orders of this Court.

Creative Doors; $3,747 to The Place for Tile; $5,354 to Gables Air Conditioning, Inc.; $2,759 to Lawrence Plumbing Supply; $4,965 to Sound Advice; and $6,772 to Jenson & Hanson.