**PHOENIX MARINE ENTERPRISES, INC., a Florida corporation, Plaintiff,**

v.

**ONE (1) HYLAS 46′ CONVERTIBLE SPORTFISHERMAN HULL #1, her engines, tackle, appurtenances, etc., in rem Europa Yachts, Inc., a New York corporation, and Louis Leggio, in personam, Defendants.**

No. 87–0359–CIV.

United States District Court, S.D. Florida.

Feb. 16, 1988.

Amended Order Imposing Sanctions for Civil Contempt Feb. 16, 1988.

William F. Hamilton, Holland & Knight, Miami, Fla., for Phoenix Marine.

Arthur Roth, Miami, Fla., Gerhardt Schreiber, Coral Gables, Fla., for Europa & Leggio.

Mitchell Bloomberg, Kevin Emas, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., for Leggio in contempt proceedings.

Craig R. Stevens, Baker & McKenzie, Miami, Fla., for Queen Long.

## AMENDED ORDER IMPOSING SANCTIONS FOR CIVIL CONTEMPT ON DEFENDANTS LEGGIO AND EUROPA YACHTS

NESBITT, District Judge.

THIS CAUSE came before the Court on February 12, 1988 for a hearing on further civil contempt sanctions to be imposed against LOUIS LEGGIO and EUROPA YACHTS, INC. for the continued disobedience to this Court's orders. The Court received evidence, heard argument of counsel, and hereby takes judicial notice of all prior testimony and evidence of record in this action.

### INTRODUCTION AND PROCEDURAL BACKGROUND

On April 16, 1987 the Court entered a permanent injunction against LEGGIO and EUROPA [Available on WESTLAW, 1987 WL 33820]. The Court ordered that:

The Defendants LEGGIO and EUROPA are hereby Ordered to sign all documents and perform all acts requested by PHOENIX necessary to effectuate the sale of the vessel and for title to vest in the ultimate purchaser. Said acts shall be performed within ten (10) days of written requests to counsel of record for EUROPA and LEGGIO.

On July 8, 1987, Plaintiff's counsel requested in writing that LEGGIO and EUROPA provide PHOENIX with certain specific documents, including the Master Carpenter's Certificate, necessary to sell the vessel.

On July 28, 1987, PHOENIX filed a Motion for Order to Show Cause and Incorporated Memorandum of Law asserting that LEGGIO and EUROPA had failed to comply with the Court's April 16, 1987 order in three respects, viz., LEGGIO and EUROPA had (1) failed to notify advertisers of the vessel, (2) failed to file copies of telegraphic notices to the advertisers with the Clerk of the Court, and (3) failed to provide the documents requested by PHOENIX's counsel on July 8, 1987, in accordance with the Court's permanent injunction.

On September 2, 1987, the Court issued an Order to Show Cause why LEGGIO and EUROPA should not be held in contempt. The Court's order required a written response from LEGGIO and EUROPA within twenty (20) days and scheduled a hearing for October 13, 1987.

At the October 13, 1987 hearing the Court heard evidence that Defendants had not complied with the Court's April 16, 1987 Order in all three respects. The Court provided LEGGIO and EUROPA an opportunity to provide evidence why they should not be held in contempt. Following the hearing the Court orally issued its order and found LEGGIO and EUROPA in contempt of the Court's April 16, 1987 order on all three points. The Court ordered LEGGIO and EUROPA to comply within 48 hours and entered a fine of $250.00 per day until compliance was complete should LEGGIO and EUROPA not perform within the required period. The Court also ordered LEGGIO and EUROPA to appear for a hearing on October 21, 1987 to determine possible further sanctions, if LEGGIO and EUROPA had again failed to comply with the Court's specific instructions.

On October 20, 1987, the Court memorialized its oral order and entered its written

order holding LEGGIO and EUROPA in contempt stating *inter alia* [Available on WESTLAW, 1987 WL 33821]:

> After hearing testimony of the witnesses and examining documentary evidence, this Court finds that EUROPA and LEGGIO are in violation of this Court's Order dated April 16, 1987, and PHOENIX that has carried its burden of proving by clear and convincing evidence that LEGGIO and EUROPA are in violation of the Court's Order. EUROPA and LEGGIO have shown no valid reason for their failure to comply with the Court's Order. Therefore, it is
>
> ORDERED and ADJUDGED that EUROPA and LEGGIO shall execute all documents presented to it by PHOENIX necessary for the sale of the vessel to a third party including a power of attorney and to deliver to PHOENIX the master carpenter's certificate for Hull No. 1 and the original Bill of Lading.

Order dated October 20, 1987, at 2–3. LEGGIO and EUROPA failed to obey this order by failing to provide PHOENIX with the Master Carpenter's Certificate for Hull No. 1.

On October 21, 1987, LEGGIO did not appear before this Court as ordered, and, after being advised by LEGGIO's counsel that they did not know his whereabouts, the Court issued a bench warrant for his arrest. For the next two (2) months LEGGIO remained a fugitive and continued to defy the Court's authority. On December 21, 1987 LEGGIO surrendered to the United States Marshal's office in Miami and the Marshal brought LEGGIO before the Court on that date. At the December 21, 1987 hearing LEGGIO testified that he was unable to afford counsel. He further testified that he was unable to borrow money to obtain counsel and that his prior counsel had refused to represent him in further contempt proceedings. Bssed upon those representations the Court appointed the United States Public Defenders Office to represent him.

At the December 21, 1987 hearing, the Public Defender requested additional time to prepare LEGGIO's defense of inability to comply with the Court's orders. The Court scheduled a further hearing for January 12, 1988 to afford LEGGIO further opportunity to comply with the Court's orders or to present additional evidence to establish his inability to comply. At both the October 13, 1987 hearing and the December 21, 1987 hearing the Court advised LEGGIO and his counsel that it was considering incarceration as a sanction should LEGGIO and EUROPA continue to fail to comply with the Court's orders.

On January 4, 1988, new privately retained counsel for LEGGIO filed their notice of appearance in the action, and requested that the Public Defender's Office be discharged from all further responsibility. On January 12, 1988 the Court held an evidentiary hearing to afford LEGGIO a second opportunity to present evidence that he was unable to convey the documents as ordered by the Court on April 16, 1987. Based upon the testimony and evidence received into the record at the January 12, 1988 hearing, and upon defendants' request that the Court take judicial notice of the testimony and evidence received in the prior proceedings in this cause, the Court hereby enters the following findings of fact and conclusions of law.

## I

### FINDINGS OF FACT

#### A.

#### *The Mortgage Transaction*

1. On April 16, 1987 the Court entered judgment for PHOENIX MARINE ENTERPRISES, INC. ("PHOENIX") in this case. In its Order the Court found that PHOENIX was entitled, *inter alia*, to specific performance of its contract with EUROPA dated February 11, 1987.

The Court also awarded possession of the Hylas 46' Vessel to PHOENIX and ordered:

> Defendants LEGGIO and EUROPA are hereby ordered to sign all documents and perform all acts requested by PHOENIX necessary to effectuate the sale of the Vessel and for title to vest in the ultimate purchaser. Said acts by EUROPA and LEGGIO shall be performed within

ten (10) days of written request to counsel of record for EUROPA and LEGGIO.

2. The April 16, 1987 order also provided that PHOENIX was entitled to injunctive relief and entered a permanent injunction ordering:

LEGGIO and EUROPA and their agents, assigns, partners and others acting in concert with them, under their control, supervision, or authoritiy or under any right EUROPA claims with respect to Queen Long, shall immediately cease and desist from all advertising and promoting of any and all new vessels manufactured by Queen Long not introduced into this Country by PHOENIX. LEGGIO and EUROPA are hereby ordered within twenty-four (24) hours from date of entry of this Order to notify telegraphically or by telex all persons with whom advertising of Queen Long vessels had been placed under color of EUROPA's purported contract with Queen Long and which advertising has not appeared as of the date of this Court's Order regarding the cessation of all such advertising.

3. EUROPA and LEGGIO failed to provide notice to the advertisers and/or magazines who had run ads for the Hylas 46' and failed to file copies of any telex notices with the Clerk of the Court as specifically required by the Court's Order.

4. On July 8, 1987 Plaintiff's counsel requested in writing that LEGGIO and EUROPA provide certain documents necessary to transfer the Vessel to a third party including the Master Carpenter's Certificate for the Hylas 46' Convertible Sport Fisherman, Hull No. 1. PHOENIX's written request was made pursuant to the Court's order and quoted the order verbatim.

5. Despite knowledge of this July 8, 1987 written request for the Master Carpenter's Certificate, LEGGIO on July 22, 1987 culminated a series of loan transactions whereby EUROPA borrowed $125,-000.00 from an entity known as Fundex Capital Corporation ("FUNDEX"). As part of the transaction LEGGIO granted FUNDEX a security interest in the 46' Hylas Vessel as collateral for the loan and in

connection therewith gave FUNDEX possession of the vessel's Master Carpenter's certificate. After July 8, 1988 and prior to the closing of the loan transaction on July 22, 1987, LEGGIO had the ability to obtain release of the Master Carpenter's Certificate from FUNDEX by a simple request to FUNDEX and withdrawal of its loan application. As a result of the loan's closing on July 22, 1987, FUNDEX now retains the Master Carpenter's Certificate and thus far has refused to release it to LEGGIO without repayment of the loan.

6. On July 22, 1987, LEGGIO actually entered into two (2) separate but related transactions. He borrowed $400,000.00 from Richmond Hill Savings Bank, secured by a first mortgage on his house in New York. The second transaction was a loan for $125,000.00 from FUNDEX, secured by a second mortgage on his house and by a security interest in the 46' Hylas. As part of the latter transaction LEGGIO gave the Master Carpenter's Certificate to FUNDEX pending repayment of the loan.

### B.

### *The Value of Leggio's Residence*

7. At the January 12, 1988 hearing, LEGGIO testified that his house in New York could be sold for approximately $550,-000.00. However, he claimed that the house was encumbered by the $400,000.00 first mortgage to Richmond Hill Savings Bank and the $125,000.00 second mortgage to FUNDEX. Leggio further identified documents showing that the house had been insured for $525,000.00. The insured value of the house did not include the value of the approximately one-half acre of land upon which it is located in central Long Island in New York State.

8. On January 29, 1987 LEGGIO obtained in EUROPA YACHTS INC.'s name a loan of $250,000.00 from an entity called Corporate Financing, Inc. by granting a second mortgage on his home behind a first existing mortgage of $125,000.00. As part of that transaction, LEGGIO signed a loan application which conditioned the loan on the receipt of an appraisal of the house in

excess of $700,000.00. To satisfy that condition Corporate Financing obtained a professional appraisal on LEGGIO's house which as of January 29, 1987 appraised the fair market value of the house at $730,000.00. This appraisal was produced by the attorney for FUNDEX at his deposition on January 8, 1987 in Garden City, New York. He testified that the proceeds of the loan were used for satisfying various personal and corporate loans and obligations.

9. The current fair market value of the house is between the $550,000.00 value admitted by LEGGIO during his testimony and the $730,000.00 value of the January 1987 appraisal.

## C.

### The Europa MASTER

10. In February 1987, LEGGIO and EUROPA received in Miami, Florida two vessels to be displayed at the Miami International Boat Show. One vessel was a Hylas 46 manufactured by Queen Long Marine in Tawian. This Hylas 46 was initially the subject of this action. Possession of the vessel was awarded to PHOENIX in the Court's Final Judgment of Permanent Injunction which findings of fact and conclusions of law are incorporated herein by reference.

11. The second vessel has been referred to in these proceedings as the MASTER. LEGGIO and EUROPA displayed this vessel at the Miami International Boat Show. After the boat show LEGGIO and EUROPA transported this vessel to Long Island, New York, where LEGGIO and EUROPA attempted to sell the vessel during the summer and fall of 1987.

12. This vessel has been marketed by LEGGIO and EUROPA and most recently by UNIVERSAL as a 44' "Europa Motor Yacht." The vessel's advertised retail sale price was $225,000.00. LEGGIO and EUROPA's business relationship with UNIVERSAL is the same with respect to the Hylas and MASTER vessels. This Court has previously found with respect to LEGGIO's ongoing relationship with UNIVERSAL YACHTS, INC.:

During the pendency of this action, EUROPA entered into an agreement with UNIVERSAL whereby UNIVERSAL would take title of all vessels shipped to the United States by QUEEN LONG to (sic) EUROPA would pay EUROPA a percentage of the profits from any sale and reimburse EUROPA for its deposits.

UNIVERSAL functions as EUROPA's "banker" and assists EUROPA and LEGGIO when necessary by advancing funds to EUROPA and/or title to the vessel and/or taking actual possession. For example, in March 1987, LEGGIO was able to obtain a $51,000 "loan" from his "banker" Alex Nichols in order to obtain a bond in anticipation of the release of the Hylas vessel. The MASTER is now in the possession of UNIVERSAL and LEGGIO claims neither he nor EUROPA has any interest in the vessel. However, the EUROPA checkbook reveals that LEGGIO and EUROPA have been making interest payments to UNIVERSAL on the 44' EUROPA MASTER in the amount in excess of $1,500 per month.

13. LEGGIO and EUROPA have introduced no documents into evidence with respect to their relationship with UNIVERSAL concerning the MASTER. The Court finds LEGGIO's testimony regarding the MASTER to be vague, ambiguous, and contradictory. The Court further finds it incredible that UNIVERSAL would purchase the MASTER in Taiwan, then turn it over to LEGGIO to show it at the Miami International Boat Show and to retain thereafter for some 10–11 months without any written brokerage agreement, correspondence or other evidence of the relationship. This Court finds that LEGGIO and EUROPA are the actual owners of the MASTER, and that they entered into an agreement with UNIVERSAL under which UNIVERSAL advanced money to facilitate either the purchase of the vessel or its care since its arrival. Absent evidence as to the amount of UNIVERSAL's investment in the vessel the Court must and can only conclude that EUROPA and LEGGIO now have an interest in the MASTER equal to its full advertised sale price of $225,000.00.

## D.

### *Additional Matters*

14. LEGGIO has failed to pay the $250 per diem fine assessed by the Court on October 13, 1987. LEGGIO's excuse is that he had not received notice or a bill to pay these fines. LEGGIO was present in open court on October 13, 1987 when the daily fine was announced.

15. LEGGIO testified that he had been the owner of a business known as Computers–R–Us which was destroyed by fire in 1986. Although the insurance claim was denied by the insurance company he has filed suit claiming $900,000 under his fire insurance policy for the destruction of that business. He testified that he had made no attempt to sell that claim to raise funds to comply with the Court's Orders; nor did LEGGIO put on evidence to show that any reasonable settlement of the suit was impossible.

16. LEGGIO testified that although he has a State of New York real estate salesman license he has not attempted to obtain gainful employment to increase his ability to comply with the Court's order, nor has LEGGIO otherwise sought any gainful employment despite the fact that he testified he has had no income for two years.

17. LEGGIO has testified that his only efforts to obtain the money necessary for the release of the Master Carpenter's certificate was to request loans from his mother, his mother-in-law, and "banker" Alex Nichols.

18. The Court finds that LEGGIO has sufficient assets including, but not limited to, his house which could be liquidated to comply with the Court's order. LEGGIO's house and property in Long Island have an insured value of $525,000 for the house alone exclusive of the approximately ½ acre of land. LEGGIO testified that the house alone is valued at approximately $550,000 and the house was appraised in January 1987 at $730,000.

19. The Court finds that based upon this record LEGGIO has not discharged his burden to show that all reasonable avenues for raising funds have been explored and exhausted in order for him to be excused from compliance with the Courts' orders due to inability.

20. The Court finds that LEGGIO is in violation of the Court's April 16, 1987 and its October 20, 1987 Orders. LEGGIO presented no current appraisal of the house. There was no showing that he was unable to sell the house which was valued somewhere between $525,000 and $700,000. Even accepting LEGGIO's lower estimate of value, he could comply with the Court's orders by selling or refinancing the house. The Court finds that LEGGIO has not complied with his burden of showing that he is incapable of complying with the Court's order and further finds that LEGGIO's asserted inability to comply has been self-created.

## II

### CONCLUSIONS OF LAW

21. This is an action for civil contempt. Civil contempt is a remedial sanction designed and intended to obtain compliance with a court order or to compensate for damages sustained as a result of non-compliance. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *National Labor Relations Board v. Blevins Popcorn Co.,* 659 F.2d 1173, 1184 (D.C.Cir.1981).

22. Relying on the standard in this circuit, as enunciated in *Piambino v. Bestline Products, Inc.,* 645 F.Supp. 1210, 1213 (S.D.Fla.1986) the Court on this record cannot say that LEGGIO and EUROPA have carried their burden to prove an inability to comply defense. Since the Court had already found in its October 20, 1987 order that the Plaintiff has proven by clear and convincing evidence that LEGGIO and EUROPA are in contempt of the Court, the only issue before the Court at the January 12, 1988 hearing was the contemnors' asserted inability to comply with the Court's April 16, 1987 and October 20, 1987 orders. The inability defense requires that the person "has in good faith employed the utmost diligence in discharging his ... responsibilities." *Natural Resources*

*Defense Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975).

*Piambino*, 645 F.Supp. at 1214.

The contemnors "must demonstrate that they have done their utmost to comply" with the Court's orders. *.Piambino* at 1214.

> To succeed on this defense, however, the respondent must go beyond a bald assertion of inability and satisfy his burden by introducing evidence in support of his claim. *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir.1984); *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir.1986).
>
> This burden is satisfied by making "in good faith *all* reasonable efforts to comply." *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir.1976). We construe this requirement strictly. "Even if the efforts he did make were 'substantial,' 'diligent' or 'in good faith,' . . . the fact that he did not make 'all reasonable efforts' establishes that [respondent] did not sufficiently rebut the . . . prima facie showing of contempt. The . . . use of a 'some effort' standard for measuring the strength of [the] defense [would be] an abuse of discretion." *Hayes*, 722 F.2d at 725 (citation omitted); *Hodgson v. Hotard*, 436 F.2d 1110, 1115 (5th Cir.1971).

*Piambino*, 645 F.Supp. at 1213.

23. LEGGIO has failed to establish that he has made *all* reasonable efforts to comply with the Court's order. The burden of proof surrounding an inability to pay defense is substantial:

> To satisfy their burden of proof, defendants having raised this defense [of inability to comply], must show "categorically and in detail" why they are unable to comply. *N.L.R.B. v. Trans–Ocean Export Packing, Inc., supra*, [473 F.2d 612] at 616 [9th Cir.1973], quoting *In re Byrd Coal Co., Inc.*, 83 F.2d 256 (2d Cir.1936) . . . [T]he defense of financial incapacity is available to one who shows that all reasonable avenues for raising funds have been explored and "exhausted." *Ramey Borough v. Commonwealth, DER*, 466 Pa. 45, 351 A.2d 613, 616 (1976). Finally, a party claiming impossibility is under a continuing duty to comply as means become available. (Citations omitted).

*Id.* at 1215.

24. LEGGIO and EUROPA have contended that they are unable to supply the Master Carpenter's Certificate to the Plaintiff, because it is in the possession of an entity known as Fundex Capital Corporation ("Fundex").

This Court granted LEGGIO and EUROPA two hearings to establish their inability defense. They have failed to carry their burden. LEGGIO testified that his house is valued at $550,000. He also testified that it was insured at $525,000 for the house alone, exclusive of value of the approximately ½ acre of land upon which it sits. The January 1987 appraisal of the property values the house at $730,000. LEGGIO and EUROPA did not introduce any more current appraisal of the value of the property.

25. LEGGIO has not attempted to settle or sell his pending $900,000 lawsuit against his former fire insurer.

26. The Court, moreover after weighing the evidence and observing the demeanor of the witnesses, concludes that LEGGIO in fact owns a substantial interest in the MASTER vessel which is now purportedly in the possession of UNIVERSAL YACHTS and Alex Nichols. Having received no evidence to the contrary, the Court concludes that LEGGIO and/or EUROPA own a beneficial interest in that vessel in the amount of $225,000.00.

27. LEGGIO testified that he has not sought to sell the house or land, his lawsuit, or the MASTER vessel to satisfy the Court's order nor has he attempted to obtain employment to attempt to satisfy the Court's order in whole or in part. LEGGIO has simply not met his burden to demonstrate to this Court that he "has in good faith employed the utmost diligence in discharging his responsibilities." *Natural Resources Defense Council v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975). Based upon the record before this Court, LEGGIO and EUROPA have not done their utmost to

comply with the Court's orders. *See Piambino*, 645 F.Supp. at 1214. Despite numerous opportunities to comply with the Court's orders, LEGGIO and EUROPA have failed to take all reasonable efforts or even diligent effort to attempt to comply with the Court's orders.

28. Not only have LEGGIO and EUROPA failed to carry their burden to show an inability to comply, additionally, it is clear to the Court that their asserted inability to comply is self-created. After the issuance of the Court's permanent injunction on April 16, 1987 and after PHOENIX had requested the Master Carpenter's Certificate on July 8, 1988, LEGGIO and EUROPA borrowed $125,000 from Fundex and granted Fundex a security interest in the Hylas 46' vessel on July 22, 1988, and/or that relinquished his control over the Master Carpenter's Certificate. This act created the contemnors' asserted ability to comply with the Court's orders.

> Inability to comply with a court order may be a defense to a charge of contempt ... but not if the defendant created his own inability. (Citations omitted).

*Piambino*, 645 F.Supp. 1215.

In a similar action, *Air America, Inc. v. Hatton Brothers, Inc.*, 570 F.Supp. 747 (S.D.Fla.1983), the district court ordered the incarceration of the president of the contemnor corporation and awarded damages and reasonable expenses to the moving party because the court found the contemnor's inability to comply was self-created. In that case, the district court had awarded possession of an aircraft to the defendant, Hatton Brothers. The Plaintiff Air America asserted at the contempt hearing that it was unable to turn over the aircraft because it had sold it prior to the court's order. The court held that Air America's inability to turn over the aircraft was caused by its own actions. Air America had not notified the court prior to the entry of the order that it intended to transfer the aircraft and had failed to prove a valid transfer to a third party.

The similarities to the instant action are striking. LEGGIO and EUROPA, like Air America, created their own inability to comply with the Court order. LEGGIO transferred a security interest in the vessel to avoid the Court's power and voluntarily relinquish control of the Master Carpenter's Certificate.

WHEREFORE, the Court finds that LEGGIO and EUROPA have (1) failed to carry their burden to show an inability to comply defense, and (2) even if that inability exists it has been created by LEGGIO himself and cannot serve as a defense to sanctions for civil contempt.

Accordingly, it is hereby

ORDERED AND ADJUDGED:

(1) LEGGIO and EUROPA are held to be in civil contempt of this Court for failing to comply with its orders entered on April 16, 1987 and October 20, 1987.

(2) As a further sanction to the fine already imposed of $250 per day, LOUIS LEGGIO shall be forthwith remanded to the custody of the U.S. Marshals and incarcerated until such time as he complies with both Court orders and supplies the Master Carpenter's Certificate to the Hylas 46' vessel, Hull # 1 to the Plaintiff, PHOENIX MARINE.

(3) The Defendant, LEGGIO, shall have the ability to purge himself of contempt by turning over the Master Carpenter's Certificate to PHOENIX MARINE.

(4) The Court shall retain jurisdiction and shall enter an award of damages to the Plaintiff, PHOENIX MARINE, for actual damages caused by LEGGIO and EUROPA's contempt of the Court's orders including but not limited to costs and attorneys' fees incurred since the commencement of this contempt proceeding in July 1987.