## Cucinelli v. Big Beaver Falls Area School District

*Daniel Delaney,* for plaintiff.
*Sam Orr,* for defendant.

MANNIX, *J.,* October 31, 1986 — This matter is presently before the court on appeal by petitioner, Nicholas M. Cucinelli, from an adjudication of the board of school directors of the Big Beaver Falls Area School District concerning his employment status as a teacher in that district. Said appeal is statutorily authorized by the Local Agency Law, 2 Pa.C.S. §752, and the jurisdiction of this court is set forth in 42 Pa.C.S. §933. Before we review the facts, it is important to note the scope of our review in an administrative appeal such as this. The court may interfere with the action taken by the administrative agency only if the agency's findings were (1) unsupported by the evidence, (2) based on an error of law, or (3) constituted a clear abuse of discretion. *Ramey Borough v. Commonwealth, Dept. of Environ. Resources,* 466 Pa. 45, 351 A.2d 613, (1976); *Pa. Human Relations Commission v. Chester School District,* 209 Pa. Super. 37, 224 A.2d 811 (1966); *Kundrat v. Commonwealth, State Dental Bd.,* 67 Pa. Commw. 341, 447 A.2d 355 (1982). A complete transcript was generated at the local agency hearing before the board of school directors and no additional testimony was presented at the administrative appeal hearing before this court. Based on the record made at the original hearing, we find the following to be the pertinent facts.

(1) Petitioner was hired by the school district in January 1969, as a social studies teacher, certified by the Pennsylvania Department of Education in Comprehensive Social Science.

(2) He held said position and satisfactorily performed the requisite duties and functions of the same from January 1969 until September 1984, when the school district suspended him from employment.

(3) The school district determined that there was a need to reduce the staff in the social studies department commencing with the 1984-1985 school year as a result of an apparent drop in overall pupil enrollment.

(4) Pursuant to 24 P.S. §§11-1124 and 11-1125.1, the school district is required to suspend professional employees in inverse order of seniority.

(5) Based upon their calculations, the school district determined that petitioner was possessed of the least amount of seniority as among the teachers in the social studies department, and so notified him of his suspension.

Because petitioner's argument focuses mainly on the school district's calculation of his seniority status, we must examine the facts with regard to the same.

(6) During the more recent years of his employment, petitioner periodically suffered from recurring neck and back pain as a result of a 1978 automobile accident.

(7) He was subsequently absent from time to time for the purpose of recuperation, although such absences eventually became fewer in number and shorter in duration.

(8) In early 1982, petitioner re-injured his neck while playing racquetball, which subsequently necessitated further medical treatment.

(9) Due to his inability to obtain adequate convalescent attention, petitioner sought recuperation at his parents' home in Florida.

(10) Prior to leaving for Florida, he did contact the principal of the high school to inform the appropriate personnel of his plans and arrange for a substitute teacher for his classes, but he did not contact the superintendent of schools to obtain an "approved" leave of absence at that time.

(11) Upon his return to the area, petitioner secured his physician's certification that he was able to return to teaching and presented the same to the appropriate personnel.

(12) He further obtained a second note from his physician indicating the extent of his convalescent period, as per the request of the school superintendent.

(13) Some time later, petitioner received a letter dated July 7, 1982, from the superintendent relating to his 1982 leave; the superintendent reiterated his dissatisfaction with petitioner's excuses and the vagueness of the physician's statements, and spelled out the "seniority credit" that petitioner would *not* be given.

Because of the importance of said July 7, 1982, letter, we will quote from it. The third and fourth paragraphs provide:

"During the 25 school days that you were absent, you had five sick days remaining and you were paid by the business office for your first five days since you reported your absence as illness. You had no remaining sick days to cover your absence for the next 20 days and you made no attempt to seek approval to be away from your job for the time you knew you would be absent and had no sick days covering your absence. In addition, you knew your doctor's excuse was not acceptable and you have

made no attempt to provide me with a further statement that would justify your absence. Therefore, you will not be given seniority credit for the following days during the 1981-1982 school year:

"February 22, 23, 24, 25, 26, 1982

"March 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 1982 . . . .

". . . And your seniority now stands as indicated."

Attached to said letter was a copy of the revised information sheet the superintendent maintained, which reflected petitioner's seniority credit. The last item listed was an entry which showed an "unapproved leave" for the days specified above and an "X" was marked in the appropriate column showing no seniority credit for those 15 days. Petitioner decided not to contest the superintendent's determination and seek an "approved" leave of absence since, in any event, even exclusive of the 15 "unapproved" days, his seniority credit still gave him 76 days more seniority than the next closest social studies teacher.

Petitioner continued to teach and his status remained as indicated above throughout the 1982-1983 and 1983-1984 school years. Not until June 1984, prior to the opening of the 1984-1985 school year, when the school board determined that it was necessary to reduce the size of the social studies teaching staff due to a decline in student enrollment, was any further consideration given to the seniority status of petitioner. Until then, it was the school board's opinion that the 15 days of "unapproved" leave which it had assessed against petitioner in 1982 did not constitute a break in service and that, therefore, there was at least one other teacher in the social studies department who was more junior than and subject to furlough before petitioner.

However, upon said determination by the school board to reduce the number of teachers, an attorney for the Pennsylvania State Education Association somehow became involved in the process of designating or determining which teacher it would be from each department who would be suspended. After reviewing the records of the teachers in the social studies department, this attorney apparently advised the school board that petitioner's February-March 1982 leave of absence ought to be treated as a complete break in service, rather than a loss of 15 days' seniority credit. This rendered petitioner's seniority to *zero* as of his return to teaching on March 15, 1982.

Given this re-assessment of petitioner's status, the school board was compelled to suspend petitioner as the least senior member of the social studies department. Petitioner received notice of his suspension by the school district by letter dated September 4, 1984. This letter also informed petitioner of his rights under Local Agency Law — that is, that he had the right to a hearing, representation by counsel, presentation of evidence and/or witnesses and cross-examination of the same — which he subsequently elected to exercise.

A "formal grievance hearing" was conducted before the superintendent of schools on September 19, 1984, at which time petitioner's grievance was denied. The reason stated in the school superintendent's decision:

"Case law has established that an unapproved leave constitutes a break in seniority. Your seniority began to accrue anew when you returned following this leave."

This, the parties agree, was the first notice petitioner received that his February-March 1982 leave was being considered a complete "break in service"

This statute would be easy to apply were it not for the fact that it is difficult to determine just where petitioner's leave or absence from teaching falls within the language of the statute. It is clear to this court that petitioner's leave was, in fact, an *unapproved* leave. In his letter of July 7, 1982, the superintendent clearly indicated his dissatisfaction with petitioner's explanation for the absence and did not grant petitioner any days of seniority credit for that period. Petitioner accepted this determination by reason of the fact that he did not seek any further review of the matter. He took no steps, as he had in the past on other occasions, to seek the superintendent's approval of his absence and retain the 15 days of seniority credit. Even without an explicit statement from his superiors, petitioner can reasonably be assumed to have realized that his leave of absence was not approved.

Counsel for respondent school district bases his argument on the legal maxim: expressio unius est exclusio alterius (i.e. as a matter of statutory interpretation, expression of one thing indicates exclusion of another.) The school district contends that if "approved leaves are *not* breaks in service," according to the statute, then *un*approved leaves *must* necessarily *be* breaks in service. The school district relies on case law developed prior to the enactment of the statute which became effective November 20, 1979, to support its contention.

In *Halko v. Foster Township School District,* 374 Pa. 269 (1953), the school district approved two consecutive year-long absences of a teacher after he had initially sought approval for and taken a year's sabbatical. Several years after his return from this three-year absence, he was suspended by the school district on the basis of declining student enrollment; the administration calculated his seniority as

rather than simply a loss of 15 days seniority credit. Dissatisfied with this treatment and the superintendent's decision, petitioner requested a local agency hearing, which was then held on November 29, 1984. Both petitioner and the school district were represented by counsel at this time. A complete transcript of the public hearing was taken and filed with the prothonotary in accord with statutory procedure. No decision was made until the board of school directors entered their adjudication on the record on November 27, 1985, nearly a full year from the date of local agency hearing. The board affirmed the action taken by the superintendent of schools and suspended petitioner. It is from this adjudication that petitioner now appeals under the authority of Local Agency Law. An administrative appeal was filed and a hearing was held before this court on August 10, 1986, at which time counsel for each party presented legal arguments, submitted briefs in support thereof and introduced the record made at the November 29, 1984, local agency hearing.

The key issue in this case is the proper interpretation of the applicable statutory authority. Both parties agree that the situation is controlled by 24 P.S. §11-1125.1, which states:

"Persons to be suspended

"(a) Professional employees shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. *Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.*" (emphasis added).

beginning from the date of his return rather than accumulating it throughout his absence. The Supreme Court upheld the action taken by the school district for the reason that, despite approval of the two-year extension of his sabbatical, Halko was statutorily entitled to only a one-year leave of absence and, therefore, the additional two years constituted a break in service.

In *Wilchenski v. Throop Borough School District,* 383 Pa. 394 (1956), plaintiff teacher filed suit to have the courts determine her seniority status when it became evident to her that the threat of layoff was looming. The trial court determined that the absences of two other teachers did not constitute breaks in service and, therefore, plaintiff was more junior as far as seniority and was subject to being furloughed. The Supreme Court reversed the lower court, placing plaintiff in a more senior position and reiterated the rationale of *Halko* that leaves of absence unsupported by statutory authority do constitute breaks in service.

However, respondent's reliance on these cases in this particular instance is flawed in two respects. First, petitioner's leave is not alleged to have been taken in violation of any statutory authority. In fact, sick leaves *are* authorized in 24 P.S. §11-1154, which provides for "payment of salaries in cases of sickness, injury or death." This section provides for a certain number of fully compensated sick days and no where does it indicate that any sick days taken above and beyond that amount would cause a complete break in service. Thus, petitioner's leave cannot be viewed as being unsupported by statutory authority.

Furthermore, the *Halko* and *Wilchenski* cases were, as already noted, decided *prior* to the repeal of former section 11-1125 and its 1979 replacement by

section 11-1125.1. While the Statutory Construction Act of 1972, 1 Pa.C.S. 1921(c), states that in cases where the language of the statute is not explicit, the intent of the Legislature may be ascertained by considering, among other factors, "the former law, if any, including other statutes upon the same or similar subjects," such former law is not controlling where, as here, there is a *noticeable* difference in both the format and the language of the new statute. There was no mention whatsoever in the old section 11-1125 pertaining to approved/unapproved leaves of absence and breaks in service.[1] Such mention thereof as is made in section 11-1125.1 is language completely new to the statute. Therefore, the *Halko* and *Wilchenski* cases can offer, at best, only questionable elucidation of the matters now at hand.

Another, more important, flaw exists in the very foundation upon which respondent's argument is based — "expressio unius est exclusio alterius." Respondent contends that the situation herein is clearly an "either/or" situation; insofar as either petitioner's leave of absence is approved and, therefore, not a break in service as per the statute; OR petitioner's leave is unapproved and, therefore, a break in service, the alternative being unwritten but

---

1. (b) In cases in which suspensions are to be made, professional employees shall be retained on the basis of seniority rights, acquired within the school district of current employment, where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards.

implicit in the statute. Respondent fails to recognize the *third* alternative which is epitomized by the very facts with which we are confronted today. In other words, there may be certain circumstances under which an unapproved leave *does not* automatically become a complete break in service for purposes of determining seniority credit with respect to suspension and furloughing matters. Therefore, the wisdom behind respondent's proffered legal maxim cannot serve to guide our decision in this particular instance where there are more than two alternative outcomes.

Given the uncertainty involved in the interpretation of the subject statute and the fact that the issue now before this court appears to be a matter of first impression, we prefer not to speculate as to the wide range of circumstances wherein an unapproved leave of absence may still not constitute a break in service, but simply result in a loss of seniority credit for the days taken; we shall, therefore, restrict our holding to the facts at hand.

Here, we are presented with a situation wherein the petitioner/teacher notified his principal of his departure for purposes of recuperation, he offered his and his physician's excuses for such absence, and he was subsequently in receipt of written notification by the superintendent of schools that such absence was being treated as an unapproved leave with the loss of 15 days of seniority credit. More than two full years had passed before petitioner was informed that his absence was being treated as a complete break in service, and even then only as a result of his investigation of the basis for his suspension at that time. Indeed, the facts indicate that even respondent school district was satisfied by the superintendent's July 1982 disposition of the mat-

ter and not until September 1984, when it became necessary to make cuts in the teaching staff and the seniority status of various teachers was reviewed by the PSEA, was there any question as to the meaning of the language contained in section 11-1125.1 of the Public School Code.

This court finds the proper interpretation of the subject statute to include circumstances where an unapproved leave of absence simply causes the teacher to suffer a loss of seniority credit. The sequence of events and acts in this case is one such circumstance. Therefore, we hold that the board of school directors erred in its interpretation of the statute and its subsequent suspension of petitioner from his position as a teacher in the social studies department of the Big Beaver Falls High School.

For the foregoing reasons, we enter the following

## ORDER

And now, this October 31, 1986, for the reasons set forth in the attached opinion, it is hereby ordered and decreed that the appeal of Nicholas M. Cucinelli from the adjudication of the board of school directors of the Big Beaver Falls Area School District, which suspended said petitioner/appellant effective September 4, 1984, be sustained and said adjudication is hereby reversed.

Further, petitioner/appellant shall be reinstated as a teacher in the social studies department from the beginning of the 1984-1985 school year along with back pay, fringe benefits and seniority rights consistent with the attached opinion.