# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Hope Crushed Stone : and Lime Company, : Petitioner : : v. : : Department of Environmental : Protection, : No. 1373 C.D. 2017 Respondent : Argued: June 7, 2018

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge HONORABLE ANNE E. COVEY, Judge HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY JUDGE COVEY FILED: July 18, 2018

New Hope Crushed Stone and Lime Company (NHCS) petitions this Court for review of the Environmental Hearing Board's (Board) September 7, 2017 order dismissing NHCS' appeal from the Department of Environmental Protection's (DEP) January 29, 2016 letter modifying NHCS' November 30, 2015 Reclamation Plan (January 2016 Letter). NHCS presents the following issues for this Court's review: (1) whether the Board's July 31, 2014 Adjudication (July 2014 Adjudication) wherein it determined that the NHCS quarry (Quarry) was a nuisance is valid and can serve as the basis for the Department's January 2016 Letter; (2) whether the Board erred by holding that the determination that the Quarry was a nuisance was subject to collateral estoppel and administrative finality when those matters were not actually litigated and essential to the judgment; (3) whether the Board improperly restricted discovery NHCS sought from the Solebury School (School) relating to the conditions of the School grounds adjoining the Quarry that DEP alleged were impacted by

Quarry activities; (4) whether the Board properly precluded NHCS from presenting expert evidence, evidence of other alternatives and a proposed work plan that DEP should have considered relating to the conditions alleged to have caused sinkholes; and, (5) whether DEP should have considered other alternatives to certain of the January 2016 Letter's requirements, and acted arbitrarily and capriciously by basing its requirements on the amount of manpower, equipment, and permit limitations at one point in time, rather than any scientific or engineering principles.

**Background**

The Quarry is located in Solebury Township (Township) and operates as a noncoal surface mine pursuant to Permit No. 7974SM3. The School is a co-educational college preparatory day and boarding school located on approximately 90 acres in the Township, and serves approximately 230 day and boarding students in grades 7 through 12. On July 31, 2014, the Board issued the July 2014 Adjudication rescinding a depth correction DEP had issued to NHCS, which would have allowed NHCS to mine 50 feet deeper to a level of 170 feet below mean sea level (-170 MSL), and determining that the Quarry's mining and dewatering of the water table was creating a public nuisance by causing numerous sinkholes to open on the School's campus and on other surrounding properties.

NHCS filed an appeal from the July 2014 Adjudication with this Court, but discontinued the appeal before any decision was rendered. DEP subsequently requested NHCS to submit appropriate documentation and revisions to its surface mining permit, National Pollutant Discharge Elimination Permit (NPDES), and reclamation plan in order to bring both permits into compliance with the July 2014 Adjudication and address the existing public nuisance. Thereafter, DEP repeatedly asked NHCS to submit a reclamation plan that would expeditiously abate the public nuisance. DEP's objective was to restore groundwater beneath the School and in the

2

surrounding area as soon as possible to abate the public nuisance. However, the reclamation plans NHCS submitted to DEP were based on the amount of time NHCS needed to remove all mineable mineral reserves from the Quarry, instead of being determined by the amount of time required to restore the groundwater levels to pre-mining conditions to abate the public nuisance.

On October 1, 2015, DEP issued a Compliance Order (October Compliance Order) requiring NHCS to modify its reclamation plan to expeditiously abate the public nuisance, and to submit to DEP a reclamation plan based on the amount of time required to reclaim the Quarry rather than remove mineable reserves. The October Compliance Order stated that NHCS was in violation of Sections 7(c)(5) and 10 of the Noncoal Surface Mining Conservation and Reclamation Act (Act)[1] and mandated NHCS to submit a revised reclamation plan and other requested information by October 30, 2015. By November 2015 Order (November Compliance Order), NHCS' deadline was extended to November 30, 2015. NHCS appealed from both the October and November Compliance Orders (Compliance Orders).

NHCS submitted a revised reclamation plan to DEP on November 30, 2015 (November 30, 2015 Plan). Thereafter, on February 11, 2016, NHCS entered into a Consent Assessment of Civil Penalty (CACP) with DEP. Pursuant to the CACP, NHCS agreed to pay a $4,000.00 penalty and withdraw its appeals from the Compliance Orders within five days. NHCS withdrew the appeals from the Compliance Orders on February 12, 2016.

The November 30, 2015 Plan involved backfilling the Quarry and allowing the water levels to rise in the pit. Reclamation by backfilling is performed by piling up soil at the top of a quarry highwall and pushing it over the edge with a bulldozer. The slope is then built out until it reaches the appropriate reclamation

---

[1] Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§ 3307(c)(5) and 3310 (relating to reclamation plan and public notice timetables).

slope, which is the angle of repose, or the angle at which a given material will naturally settle if placed in a pile. The November 30, 2015 Plan indicated a reclamation crew of two people, one using a loader/excavator and one using a haul truck, moving 100 cubic yards of fill material per hour. In addition, the November 30, 2015 Plan provided that stream restoration work on Primrose Creek would be completed in May 2017, upon which time reclamation would begin and be completed in July 2022, approximately 5.23 years later. NHCS proposed to lower its pumping rate to 500,000 gallons per day (gpd) *after* the completion of reclamation in July 2022. According to the November 30, 2015 Plan, the water level in the quarry pit would be at -2 MSL in July 2022 with a goal of reaching a final elevation of +98 MSL at an undetermined point in the future. The November 30, 2015 Plan set forth that mining and reclamation would occur simultaneously and that reclamation would be conducted 46 weeks per year, allowing two weeks for holidays, two weeks for vacation, and two weeks for inclement weather.

**Facts**

On January 29, 2016, DEP issued the January 2016 Letter determining that the November 30, 2015 Plan remained deficient because, among other things, it did not expeditiously abate the previously-identified public nuisance. In the January 2016 Letter, DEP required additional personnel and equipment and a greater amount of fill, and lowered the Quarry's pumping rate to 500,000 gpd.

After reviewing the November 2015 Plan, DEP performed its own reclamation timetable calculations based upon the information NHCS provided, and determined that NHCS could reasonably complete reclamation and stream restoration work in approximately 3.12 years. DEP modified NHCS' reclamation schedule as proposed in the November 2015 Plan by adding two additional people to work on reclamation, one using a 65-ton haul truck and one using a bulldozer with equipment

4

already present onsite. In the January 2016 Letter, DEP allowed for further modification of the reclamation plan if safety or environmental concerns arose, and permitted NHCS to submit an alternative modified reclamation plan, subject to DEP's approval.

NHCS appealed from the January 2016 Letter to the Board. On August 9, 2016, in response to NHCS' discovery requests,[2] the School filed a Motion for Protective Order (Motion). On September 16, 2016, the Board granted the Motion with the exception of requiring the School to produce its communications with DEP. On September 7, 2017, the Board dismissed NHCS' appeal. On September 29, 2017, NHCS appealed to this Court.[3] On October 3, 2017, the Township and the School each filed a Notice of Intervention.

**Discussion**

NHCS first argues that the Board's ruling in the July 2014 Adjudication that the Quarry was a nuisance is not valid and, therefore, cannot serve as the basis for the January 2016 Letter. Specifically, NHCS contends that DEP never independently determined that the Quarry was a nuisance, and that no party fully and fairly litigated the issue. Moreover, NHCS maintains that the parties never litigated

---

[2] The discovery requests included notices of deposition for certain individuals, and a request for NHCS counsel and its experts to enter and inspect the School campus. NHCS sought deposition testimony from the School regarding the effects on the School of the January 2016 Letter's requirements, the School's building construction since 2006, and the School's ground water use from 2006 to present. NHCS also sought the School's building records, records on historical construction of buildings and stormwater facilities since 1978, geotechnical studies, sinkhole remediation efforts and groundwater information.

[3] "Our scope of review of an order of the Board is whether the Board committed an error of law or a constitutional violation, or whether any necessary findings of fact are not supported by substantial evidence." *United Ref. Co. v. Dep't of Envtl. Prot.*, 163 A.3d 1125, 1130 n.2 (Pa. Cmwlth. 2017) (quoting *The Ainjar Trust v. Dep't of Envtl. Prot.*, 806 A.2d 482, 487 (Pa. Cmwlth. 2002)).

whether the legal standards of a nuisance were met or whether the Board had the power to make that determination. NHCS further asserts that although not raised by the parties, the Board addressed the nuisance issue for the first time in the Board's July 2014 Adjudication. NHCS initially appealed from the July 2014 Adjudication, but withdrew the appeal when it realized that the July 2014 Adjudication "did not prohibit any mining that may be performed in accordance with the permit above -120 feet MSL." Reproduced Record (R.R.) at 2170a.

DEP rejoins that the Board explained in its July 2014 Adjudication that its "fundamental issue with the depth correction is that it allows a condition to persist that endangers the health and safety of others." R.R. at 2170a. Further, DEP contends that the Board was well within its authority in reviewing NHCS' permit amendment to find, based on evidence presented during a ten-day hearing, that the Quarry is creating a public nuisance by lowering the groundwater which, in turn, caused sinkholes to open on surrounding properties. Notwithstanding, DEP asserts that the time for NHCS to have challenged the Board's factual findings and legal conclusions contained in the July 2014 Adjudication was in its appeal therefrom. However, NHCS withdrew its appeal.[4]

The School maintains that although the July 2014 Adjudication is now unappealable, the Board did not order DEP to abate the nuisance and close the Quarry. DEP, however, had a statutory duty to address what the Board determined to be a public safety hazard caused by NHCS' dewatering of the Quarry. The Township echoes that because NHCS withdrew its appeal from the July 2014 Adjudication, it is a final order and not before this Court.

---

[4] *See New Hope Crushed Stone & Lime Co. v. Solebury Sch. & Dep't of Envtl. Prot.* (Pa. Cmwlth. No. 1497 C.D. 2014, discontinued February 10, 2015).

6

Initially, an examination of the July 2014 Adjudication is necessary to understand the current action. In 2011, DEP issued NHCS a depth correction which permitted NHCS to mine 50 feet deeper than originally permitted, *i.e.*, from -120 MSL to -170 MSL (Depth Correction). The School appealed from the Depth Correction to the Board alleging it was unlawful because NHCS' operations pursuant thereto were causing dangerous, collapsing sinkholes to open on its campus without warning, thereby threatening public health and safety. NHCS and DEP contested the School's allegation. After a two-week hearing and lengthy post-hearing submissions, the Board rescinded the Depth Correction. The Board issued conclusions of law, including, *inter alia*, that "[t]he [Q]uarry is creating a public nuisance. [Section 11(b) of the Act,] 52 P.S. § 3311(b)[;]" "[DEP] has a duty to abate and remove public nuisances. 52 P.S. § 3311(b); [Section 1917-A(3) of The Administrative Code of 1929 (Administrative Code),[5]] 71 P.S. § 510-17(3)[;]" and "[DEP] erred in approving [the] [D]epth [C]orrection that does not protect the quantity of surface and groundwater within the permit area and within adjacent areas. . . ." R.R. at 2173a. DEP did not appeal from the July 2014 Adjudication and NHCS withdrew its appeal.

NHCS now argues that the July 2014 Adjudication is void because the Board had no authority to determine that the Quarry was a nuisance. Thus, DEP's enforcement of that order, primarily the January 2016 Letter, is also void.

Section 11(b) of the Act provides, in relevant part:

> [A]**ny condition that creates a risk of** fire, landslide, subsidence, cave-in or other **unsafe, dangerous or hazardous condition**, including, but not limited to, any unguarded and unfenced open pit area, highwall, water pool, spoil bank, abandoned structure, equipment, machinery, tools and other property used in or **resulting**

---

[5] Act of April 9, 1929, P.L. 177, *as amended*, added by Section 20 of the Act of December 3, 1970, P.L. 834.

**from surface mining or other hazard to public health or safety, is hereby declared to be a nuisance**.

52 P.S. § 3311(b) (emphasis added). Section 1917-A(3) of the Administrative Code bestows upon DEP the power and duty "[t]o order such nuisances including those detrimental to the public health to be abated and removed[.]" 71 P.S. § 510-17(3).

Here, the School appealed from the Depth Correction as the resultant sinkholes were a continuing threat to the public health and safety. The Board concluded that the "School proved by a preponderance of the evidence that [DEP] erred in granting the [D]epth [C]orrection and allowing [NHCS] to create hazards to health and safety." R.R. at 2172a. Under the Act, NHCS' conduct of mining deeper under the circumstances, by definition, constituted a nuisance. Moreover, pursuant to the Administrative Code, DEP has a duty to abate and remove nuisances. Accordingly, because the Board resolved the dispute before it, and correctly relied upon the applicable law in its conclusions of law, the July 2014 Adjudication is valid. The issue as to whether the dispute was properly resolved was a matter to be raised in an appeal from the July 2014 Adjudication. Because DEP did not appeal and NHCS withdrew its appeal, the Board's order is final.

NHCS next argues that the Board erred by holding the determination that the Quarry was a nuisance was subject to collateral estoppel and administrative finality when the matter was not actually litigated and was not essential to the judgment.

The law is well-established that

> collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

8

*J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002). NHCS asserts that because the issue of whether the Quarry was a nuisance was not before the Board in the July 2014 Adjudication, it could not have been fully litigated nor was it essential to the judgment. However, NHCS inaccurately construes collateral estoppel. As the Pennsylvania Supreme Court has explained:

> '[B]y 'collateral estoppel,' a valid and final judgment, whether on the merits or not, is conclusive in any subsequent litigation between the parties based on the same or another cause of action as to all essential issues of fact actually litigated in the prior proceeding. Unlike merger and bar (res judicata), which are applicable only when the same cause of action is asserted, collateral estoppel may apply in any subsequent litigation. On the other hand, collateral estoppel is applicable only to essential issues of fact which have been actually litigated.' Cramton, Currie and Kay, Cs. Confl. of Laws 2d Ed. ABC, p. 656 (1975).

*In re Estate of R.L.L.*, 409 A.2d 321, 323-24 n.8 (Pa. 1979).

Although the dispute before the Board was whether NHCS' Depth Correction should have been permitted, the dipositive issue was whether the Quarry was the cause of the sinkholes at the School and surrounding properties. Since all parties contested the issue with their own experts and evidence during the ten-day trial, the issue was actually litigated. Further, because the Board's determination that the Depth Correction should be rescinded was based solely on the Board's finding that the Quarry is creating hazards to health and safety, it was essential to the judgment.

Moreover, this Court has held:

> Under the doctrine of administrative finality, if an appeal is not taken from a final administrative decision, claim preclusion prevents a collateral attack to challenge the effects of the administrative order. In *Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp*[.], . . . 348 A.2d 765, 767 ([Pa. Cmwlth.] 1975), this

9

Court discussed the doctrine of administrative finality, holding that:

> We agree that an aggrieved party has no duty to appeal[,] but disagree that upon failure to do so, the party so aggrieved preserves to some indefinite future time in some indefinite future proceedings the right to contest an unappealed order. To conclude otherwise, would postpone indefinitely the vitality of administrative orders and frustrate the orderly operations of administrative law.

*Id.* at 767.

*Doheny v. Dep't of Transp., Bureau of Driver Licensing*, 171 A.3d 930, 935 (Pa. Cmwlth. 2017) (citation and footnote omitted). If NHCS believed the Board improperly declared the Quarry was a nuisance, it had the right to appeal from that determination. Although NHCS appealed to this Court, once NHCS withdrew the appeal, it lost its right to contest the Board's July 2014 Adjudication. Accordingly, the Board properly held that its nuisance ruling was subject to collateral estoppel and administrative finality.[6]

NHCS next contends that the Board improperly restricted its discovery requests to the School relating to the conditions of the School grounds adjoining the Quarry that DEP alleged were impacted by Quarry activities. NHCS asserts that because the subject of the appeal was whether the January 2016 Letter's requirements were arbitrary and capricious, NHCS should have been permitted to evaluate how the January 2016 Letter's requirements related to the conditions of the School grounds adjoining the Quarry. Thus, NHCS claims that the Board erred as a matter of law, and the case should be remanded based on *McNeil v. Jordan*, 894 A.2d 1260 (Pa.

---

[6] Moreover, DEP issued the Compliance Orders requiring NHCS to modify its reclamation plan to expeditiously abate the public nuisance, and submit to DEP a reclamation plan based on the amount of time required to reclaim the Quarry, not based on removing mineable reserves. NHCS appealed from the Compliance Orders. However, NHCS subsequently entered into the CACP with DEP. Pursuant to the CACP, NHCS agreed to withdraw its appeals from the Compliance Orders, which NHCS did on February 12, 2016.

10

2006). DEP rejoins that *McNeil* supports the Board's actions, and that NHCS would need the requested information from the School in order to re-litigate issues the Board previously decided. Moreover, DEP maintains that because collateral estoppel bars relitigation of those issues, the Board properly limited the scope of discovery. Similarly, the Township asserts that NHCS was precluded by collateral estoppel and administrative finality from relitigating this issue. The School reiterates that the only relevance of the proposed discovery was to determine whether the School had contributed to the formation of the sinkholes, which was ruled upon in the July 2014 Adjudication.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil*, 894 A.2d at 1268. Although the Pennsylvania Supreme Court in *McNeil* remanded the matter to the trial court because "[t]he record before [it] reveal[ed] insufficient information to assess the propriety of [the] pre-complaint discovery request," *id.* at 1279, the Court explained:

> In practice . . . a trial court addresses a discovery request not in abstract terms but in the context of the case at bar. In doing so, the court exercises significant discretion, weighing the importance of the request against the burdens imposed on the subject party to determine, as a practical matter, whether the discovery request should be permitted. Because the trial court is the body best situated to assess the legitimacy, necessity, and burden of a given discovery request, we are loath to disturb unduly the ingrained customs and practices of our trial courts of permitting the making of averments on 'information and belief, attempting to fashion a just result that best balances the needs of the adversary parties, and making discovery rulings that comport with these basic principles. Thus, nothing in this [o]pinion should be construed to diminish materially a trial court's time-honored prerogative to evaluate pleadings and discovery requests and to fashion discovery orders in light of what it deems appropriate in a given case. Rather, this [o]pinion simply aims to guide trial courts in exercising their undisputed discretion to grant or deny pre-complaint

11

discovery requests according to the exigencies of a given case.

*Id.* at 1278-79. In its opinion granting the Motion, the Board expounded:

[NHCS] responds that its discovery requests are not seeking information regarding causation, but rather its discovery is necessary to assess the effects of [the January 2016 Letter] on the School. [NHCS] reiterates slight variations of this rather vague statement throughout its response. ('The desired discovery will assist [NHCS] in the important task of insuring that the [January 2016] Letter's requirements properly impact the area of the [Q]uarry'); ('discovery is needed for evaluation of the [January 2016] Letter's requirements related to the response at the [Q]uarry'); (discovery will 'help us determine what advances safety and health at the School'); (discovery will 'help [NHCS] determine how the requirements of the [January 2016] Letter affect the environmental conditions in the area of the [Q]uarry, the School, and the vicinity'); ('help determine the effect of the [January 2016 L]etter'); ('help assess the safety of the School'); and ('assess . . . whether the actions that are currently being taken are having any impact on the School'). We are certainly receptive to explanations of why discovery is relevant when the relevance is not obvious to us, but these vague statements are not particularly helpful. We have already held that the School grounds are unsafe because of the ever present threat of collapse sinkholes being caused by the [Q]uarry's groundwater pumping, and that the only way to make the School safe again is to allow groundwater levels to return to normal. Again, although we did not specifically require it to do so, [DEP] took our findings to heart and is requiring [NHCS] to immediately allow groundwater levels to gradually recover so that the School can, some day, eventually return to providing a safe environment for the children and faculty that live on and use its grounds. [NHCS] withdrew its appeals from the [C]ompliance [O]rders requiring it to allow groundwater levels to begin to recover, and it signed a [CACP] promising not to challenge [DEP's] findings.

The basic flaw in [NHCS'] response is that it never truly articulates how the School's building records, historical construction of buildings and stormwater facilities since 1978, geotechnical studies, sinkhole remediation efforts,

12

and groundwater use relate to any of the requirements of the [the January 2016 L]etter. [NHCS] never tells us, for example, that if the School's gymnasium was built in such a way that it will exacerbate sinkhole formation, it somehow follows that [DEP's] limitation on the [Q]uarry's groundwater pumping should be lower or higher. The only reason we can think of why information regarding construction of the gymnasium would be relevant is if we were trying to determine what is causing sinkholes to form on the campus, but that issue is off the table. We simply cannot imagine how details regarding the School's gymnasium could possibly relate to [DEP's] modifications, nor should we need to. [NHCS] has not supplied an explanation.

[NHCS] never explains why it needs, say, a detailed history of the School's sinkhole repairs in order to be able to challenge the requirement that the [Q]uarry devote a certain number of man-hours per week to reclamation. It never connects the dots between the School's management of sewage going back to 1978 and the requirement to place a minimum of 200 cubic yards per hour of backfill material for reclamation purposes during highwall reclamation. We could go on along these lines, but the point is that we agree with the School's conclusion that the only logical reason for inquiring into these matters is to relitigate the sinkhole causation issue, and that we will not allow.

Board September 7, 2017 Op. at 28-29 (quoting *New Hope Crushed Stone & Lime Co.*, 2016 EHB at 686-90). We discern no error in the Board's reasoning. Based on the foregoing, the Board did not err as a matter of law or abuse its discretion. Accordingly, a remand is not warranted.

NHCS next argues that the Board improperly precluded NHCS from presenting expert evidence, evidence of other alternatives and a proposed work plan that DEP should have considered relating to the conditions alleged to have caused sinkholes. Specifically, NHCS contends that the information was highly relevant to the determination of whether the January 2016 Letter was arbitrary and capricious and in the public interest. DEP rejoins that the Board permitted NHCS' expert to

13

testify regarding the alleged unreasonableness and unsafeness of DEP's requirements set forth in the January 2016 Letter. DEP declares, as the only issue before the Board was whether the January 2016 Letter was lawful and reasonable, the Board properly excluded the additional proffered evidence. The School asserts that the work plan was properly excluded because: (1) NHCS maintained that the work plan was not evidence and not part of the appeal when the School argued for its exclusion, *see* R.R. at 1807a-1808a; (2) NHCS did not submit the work plan before the January 2016 Letter, thus DEP could not have considered it; and, (3) the work plan was irrelevant because it proposed work *in lieu* of allowing groundwater to rise which was in clear contravention of the Compliance Orders. With respect to the expert testimony, the School avers that because the excluded opinions contradict the findings of the prior determinations, they were properly excluded.[7]

> This Court has held:

> It is clear that matters of evidence taking, and the admission of testimony and exhibits, are matters committed to the sound discretion of the hearing body. [When t]he matter to be adjudicated [is] of a technical nature, [] this Court may not substitute judicial discretion for administrative discretion in matters involving technical expertise and which are within the special knowledge and competence of the Board.

*Pa. Game Comm'n v. Dep't of Envtl. Res.*, 509 A.2d 877, 887 (Pa. Cmwlth. 1986) (citation omitted), *aff'd*, 555 A.2d 812 (Pa 1989). "We find that the Board's decision[] . . . to not admit certain evidence and testimony were technical matters within the special knowledge and competence of the Board, and absent a blatant abuse of discretion, we cannot disturb the Board's decisions." *Id.* at 888. The Board precluded the evidence on the basis that it was relevant to the issue of whether the Quarry was causing the sinkholes as opposed to whether the January 2016 Letter was

---

[7] The Township did not specifically address this issue.

lawful and reasonable. Further, with respect to the proposed work plan, although the January 2016 Letter provided that NHCS may submit alternative plans, DEP had to approve said plans. Thus, there is no basis upon which this Court can conclude that the Board abused its discretion by precluding the proffered evidence. Accordingly, this Court will not disturb the Board's decision.

Finally, NHCS contends that DEP should have considered other alternatives to several of the requirements set forth in the January 2016 Letter, and that DEP acted arbitrarily and capriciously by basing its requirements on the amount of manpower, equipment, and permit limitations at one point in time, and not on any scientific or engineering principles. Specifically, NHCS asserts that the Board's determination that the January 2016 Letter: (1) Requirement 2 is not arbitrary and capricious is unsupported by facts because the Board did not address DEP's failure to consider a change in the Quarry's condition, the condition of the equipment, or whether the workers were experienced in reclamation; (2) Requirement 3 is not arbitrary and capricious is not based on facts and ignores evidence presented to the Board because the Board failed to account for sequencing or other safety considerations; and, (3) Requirement 4 is not arbitrary and capricious is unsupported by facts because the Board ignored DEP's total absence of a reasoned and researched water discharge level.

DEP rejoins: (1) DEP's Pottsville District Manager Michael Menghini (Menghini) testified that he crafted Requirements 2 and 3 considering the list of equipment on site, the associated manpower and the workers' assignments; (2) DEP's experts testified that the reclamation plan's timetable was safe and reasonable, and the School's expert opined that Requirements 2 and 3 were reasonable; and, (3) Requirement 4's 500,000 gpd rate had been previously set as a minimum pumping rate in NHCS' 1998 NPDES permit. The School maintains that NHCS does not provide any basis for this Court to disturb Requirements 2 and 3 since NHCS did not

15

acknowledge or refute the detailed reasoning in the Board's September 7, 2017 Opinion. The Township asserts: (1) the testimony of DEP's witnesses and the School's witnesses provided more than sufficient evidentiary support for the Board to have determined that the details of the reclamation plan, as modified by DEP in the January 2016 Letter, reflected a lawful and reasonable exercise of DEP's discretion; (2) the requirements were based on and consistent with standard industry practices; (3) the requirements were based on and consistent with the July 2014 Adjudication, the Compliance Orders and the CACP; and (4) the requirements were feasible and allowed for the safe remediation of the Quarry and Primrose Creek.

> The issue presented, then, is the validity of the order of an administrative agency. The scope of review by an appellate court of such an order is limited. We may interfere with the administrative agency's action only if the agency's findings are not supported by substantial evidence; clear errors of law were made; or constitutional rights violated. When administrative agency action meets those requirements we will not substitute our judgment for the agency's.

*Ramey Borough v. Dep't of Envtl. Res.*, 351 A.2d 613, 615 (Pa. 1976) (citations omitted). With respect to NHCS' argument that the Board did not consider a change in the Quarry's condition, the equipment's condition or whether the available workers were experienced in reclamation:

> The ability of a [party] to comply with a [DEP] order, for technological or economic reasons, may be relevant in a proceeding to enforce a [DEP] order. This is not such an action however. The appeal from the issuance of the order serves only to determine the validity and content of the order.

*Id.* at 615. "If, in an appropriate proceeding to enforce such an order, [NHCS] properly establishes that all alternatives have been exhausted and compliance with the order is impossible, a court would not impose sanctions for failure to do that which cannot be done. This is not such a case." *Id.* at 616. Accordingly, after a thorough

review of the record evidence, this Court concludes that the Board did not err by determining that January 2016 Letter Requirement 2 is not arbitrary and capricious.

Concerning NHCS' Requirement 3 sequencing issue, the Board opined:

[NHCS] also argues that [DEP] did not consider the appropriate sequencing of reclamation when it mandated that 200 cubic yards of fill be moved per hour. [DEP] reasonably responds that it left the sequencing of the reclamation work to the best judgment of [NHCS]. [NHCS'] sequencing complaint stems from one of the primary sources of dispute over the reclamation requirements, which is a difference of opinion between [DEP] and [NHCS] over what should take precedence at the quarry, mining or reclamation. [NHCS] believes that it should be mining, and that it is entitled to mine out the stone in the quarry that exists above the -120 MSL mark. [DEP's] position is that reclamation has priority over mining and that [NHCS'] mining is more or less incidental to its obligation to reclaim the [Q]uarry - some mining can occur but mostly as a way to facilitate the reclamation. In the event that [NHCS] determines that it cannot concurrently mine and reclaim the [Q]uarry, [DEP] expects [NHCS] to stop mining and conduct reclamation work. We find [DEP's] position to be reasonable. [NHCS'] obligation to timely abate the nuisance is administratively final. It is up to [NHCS] to determine the appropriate sequencing for its reclamation, even if that means it will at times need to sacrifice mining.

Board September 7, 2017 Op. at 22 (record citations omitted). Clearly, the Board considered and addressed sequencing.

Relative to safety with respect to Requirement 3, the Board explicated:

[S]hould [NHCS] experience weather-related issues or any other complications, [DEP] has provided, an avenue for relief in the form of what it calls a waiver request. The January [2016 L]etter provides:

[DEP] reserves the right to modify this work plan should safety or environmental concerns arise that were not considered or known at this time. [NHCS] may propose its own work plan at any time. However,

17

> any plan submitted by NHCS requires formal, written approval from [DEP] prior to its implementation. Until [DEP] approves an alternate work plan, NHCS shall perform stream and reclamation work in accordance with the requirements set forth in this letter.
>
> [January 2016 Letter] [] Menghini testified that he did consider potential seasonal impacts to [NHCS'] work, which is why this provision was placed in the letter. [DEP] says that in the event [NHCS] experiences difficulty complying with the requirements of the letter due to unforeseen issues, [NHCS] may request a temporary waiver of those requirements. [DEP] has in fact granted [NHCS] waivers in the past, allowing [NHCS] to suspend reclamation activities on the basis of inclement weather or hazardous site conditions. Menghini even suggested that, if [NHCS] did not want to reclaim at all in the winter, [NHCS] could, for instance, submit a plan that shows how it would conduct increased amounts of reclamation during warmer months to make up for the deficit. The text of the letter appears to explicitly reserve the possibility that safety or environmental concerns could arise for which the letter on its face does not account. Therefore, we believe [NHCS'] weather concerns are overstated.

Board September 7, 2017 Op. at 21-22 (record citations omitted). Consequently, this Court holds that because the Board accounted for sequencing and safety considerations, it properly determined that Requirement 3 is not arbitrary and capricious.

Lastly, concerning Requirement 4 and the water discharge level, the Board clarified:

> The [Q]uarry previously pumped more than 2 million gpd out of the [Q]uarry in order to keep it dry to facilitate mining. The water pumped from the [Q]uarry discharges to Primrose Creek. The rate of 500,000 gpd had been earlier established in [NHCS'] NPDES permits as a minimum pumping rate that was designed to replicate the flow to the downstream portion of Primrose Creek that existed naturally prior to [NHCS'] mining through the creek to connect its two quarry pits. [DEP] chose to impose that rate

18

in the January [2016 L]etter because it would allow the water level in the [Q]uarry to rise as quickly as possible while still maintaining adequate flow to Primrose Creek. By pumping out less water the [Q]uarry has begun to fill up. Under the current pumping rate, [DEP] estimates that the [Q]uarry will fill up approximately three-and-a-half years from the date of the January 2016 [L]etter.

Board September 7, 2017 Op. at 24 (record citations omitted). Accordingly, DEP issued a reasoned and researched water discharge level. Thus, because Requirement 4 is supported by record facts, this Court holds that the Board properly determined that Requirement 4 is not arbitrary and capricious.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

New Hope Crushed Stone
and Lime Company,      :
                      :
               Petitioner   :
                      :
          v.               :
                      :
Department of Environmental   :
Protection,                  :    No. 1373 C.D. 2017
              Respondent   :

## O R D E R

AND NOW, this 18th day of July, 2018, the Environmental Hearing Board's September 7, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge